STATE OF NORTH CAROLINA v. JERRY DEAN FEWELL

No. 7826SC539

(Filed 7 November 1978)

1. **Criminal Law § 73.3— deceased's intention to do particular act—exception to hearsay rule**

    In a homicide prosecution, a witness's testimony that deceased let the witness out at a bridge and stated that he was going to pick up the defendant was admissible as an exception to the hearsay rule.

2. **Criminal Law § 48— implied admission by silence**

    In a homicide prosecution, statements made to a witness by defendant's brother in the presence and hearing of defendant to the effect that defendant had just shot and killed "a punk" because "he had beaten him out of some money" was admissible as an implied admission by defendant since the statements were of such a nature and made under such circumstances that a denial would have been naturally expected or forthcoming had the statements been untrue.

APPEAL by defendant from *Thornburg, Judge*. Judgment entered 13 January 1978 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 29 September 1978.

Defendant was charged in a proper bill of indictment with the murder of Nathaniel Talbert, Jr. Upon his plea of not guilty, the State presented evidence tending to show the following:

On 17 December 1974, Nathaniel Talbert, Jr., the deceased, and his roommate, Rudolph Thompson, were riding in an automobile in the early afternoon when they saw defendant standing on a street corner. While their automobile was stopped at the intersection, defendant told Talbert that he had some cocaine and to pick him up at 7:00 p.m. and they would go to his house and get "high". At trial, Thompson testified over objection that around 6:45 p.m., "Talbert let me out at the bridge and Talbert stated he was going to pick up Jerry Fewell." Thompson also testified that defendant had on an earlier date shown him a small silver pistol which he believed to be a .22 caliber handgun. Around 9:30 or 10:00 p.m. on that same night, Talbert was seen driving an automobile in which the defendant was riding. About ten minutes later, Talbert was found slumped over the steering wheel, having been shot to death in the automobile. A pathologist testified that the deceased had been shot six times, apparently with a .22 caliber weapon.

Sometime after midnight, the defendant and his brother, Henry Fewell, went to the apartment of Doretta Fewell. At trial, Doretta Fewell testified that while she, the defendant, and the defendant's brother were present in her apartment, Henry Fewell told her "that his brother [the defendant] had just killed a punk" because "he had beaten him out of some money." He also told her that "the punk" his brother had killed was Nathaniel Talbert. She further testified that the defendant "still had the pistol in his hand. He would just take it out of his pocket and put it back in, like he was going crazy or something, in some kind of a daze."

The defendant presented evidence tending to show the following: Defendant testified that he had never known or had any association with the deceased, Nathaniel Talbert, and that he had never owned a gun or firearm in his life.

Defendant was convicted by a jury of voluntary manslaughter. From a judgment entered on the verdict imposing a sentence of sixteen years, defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General Robert G. Webb, for the State.*

*Fritz Y. Mercer, Jr., for the defendant appellant.*

HEDRICK, Judge.

[1] Defendant first contends that the court erred in denying his motion to strike the testimony of Rudolph Thompson, that "Talbert let me out at the bridge and Talbert stated he was going to pick up Jerry Fewell." Defendant argues that the statement should have been excluded as hearsay and that its admission was prejudicial.

The issue presented by this assignment of error, whether the declarations of a person indicating an intention to do a particular act in the immediate future should be admissible as evidence that the act was in fact performed, has concerned the courts and commentators for many years. *See, e.g., Mutual Life Insurance Co. v. Hillmon*, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892); *Hunter v. State*, 40 N.J. Law 495 (1878); Wigmore on Evidence § 1725 (Chadbourn rev. 1976); McCormick on Evidence § 295 (2d ed. 1972); 1 Stansbury's N.C. Evidence § 162 (Brandis rev. 1973).

Our Supreme Court in *State v. Vestal*, 278 N.C. 561, 180 S.E. 2d 755 (1971), dealt with this issue at length. In *Vestal*, a murder victim's wife was allowed to testify over defendant's objection that her husband had told her that he was leaving their home on a Sunday evening to take a business trip with the defendant. Justice Lake, writing for the majority, held the testimony admissible as an exception to the hearsay rule, stating:

> The twofold basis for exceptions to the rule excluding hearsay evidence is necessity and a reasonable probability of truthfulness. As Professor Morgan has said in 31 Yale Law Journal 229, 231, "If it is to be admitted, it must be because there are some good reasons for not requiring the appearance of the utterer and some circumstance of the utterance which performs the functions of the oath and the cross-examination."

*Id.* at 582, 180 S.E. 2d at 769.

In the present case, the subsequent death of Talbert establishes the first basis of an exception to the hearsay rule — his unavailability to testify. The circumstances under which Talbert made the statements supply the second basis for a hearsay exception — the reasonable probability of truthfulness. We hold the challenged testimony falls within the exception to the hearsay rule described in *State v. Vestal, supra.* However, see Chief Justice Bobbitt's concurring opinion in *State v. Vestal, supra,* at page 779, and the cases cited therein. Even if the statement were erroneously admitted no prejudice was done to the defendant since there was other evidence placing the defendant and Talbert together in the automobile just ten minutes before the shooting.

[2] Next defendant argues the trial judge erred in allowing Doretta Fewell to testify as to statements made to her by her husband, Henry Fewell (the defendant's brother). Doretta Fewell tetified:

Henry told me that his brother just killed a punk and told me to be quiet. I asked him, "for what", and he said "for what — he beat him out of some money" and he said he wouldn't have killed him —

. . .

Go ahead.

He said he wouldn't have killed him if he hadn't told him to and I asked him what happened and he told me that he had beaten him out of some money and he came in the house and asked me what should he do about it — that was Henry Jerry was talking to — and Henry said that he told Jerry that he would kill the son of a bitch, so Jerry went outside and started shooting him and the car was still running.

The record discloses that all of the statements challenged by this exception were made by the defendant's brother in the presence and hearing of the defendant. The general rule concerning implied admissions is as follows:

Implied admissions are received with great caution. However, if the statement is made in a person's presence by

a person having firsthand knowledge under such circumstances that a denial would be naturally expected if the statement were untrue and it is shown that he [the defendant] was in a position to hear and understand what was said and had the opportunity to speak, then his silence or failure to deny renders the statement admissible against him as an implied admission. (Citations omitted.)

*State v. Hardy*, 293 N.C. 105, 118-19, 235 S.E. 2d 828, 836 (1977).

Clearly, the statements objected to were of such a nature, and were made under such circumstances that a denial would have been naturally expected or forthcoming from the defendant had the statements been untrue. The trial judge properly admitted the testimony as an implied admission of the defendant.

All of the remaining assignments of error brought forward and argued in defendant's brief are without merit.

Defendant had a fair trial free from prejudicial error.

No error.

Judges PARKER and MARTIN (Robert M.) concur.